UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT SCHULLER,

     Applicant,

v.                                 CASE NO. 8:21-cv-1052-SDM-AAS

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

Schuller applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for aggravated assault on a law enforcement officer, for which Schuller is imprisoned for fifteen years (following the revocation of the initially imposed probation).  In the response (Doc. 8) the respondent requests dismissal of the application as time-barred.  Schuller disagrees with the respondent's calculation and asserts entitlement to equitable tolling of the limitation.  (Docs. 12 and 25)  The respondent is correct that the application is untimely, and Schuller is incorrect that he is entitled to equitable tolling.

Under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d)(1)(A), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking

such review . . . ."  Additionally, under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Schuller's conviction became final on January 21, 2016.[1]  Absent tolling for a timely post-conviction application in state court, the federal limitation barred his claim one year later.  However, before the limitation started, Schuller filed a motion under Rule 3.800, Florida Rules of Criminal Procedure, which precluded the limitation from starting.  (Respondent's Exhibit 11)  Consequently, the limitation did not begin until that post-conviction motion was denied on January 27, 2016.  (Respondent's Exhibit 12)  Schuller let 131 days elapse before he moved under state Rule 3.850 for post-conviction relief on June 8, 2016.  (Respondent's Exhibit 13)  Tolling continued until the mandate issued on May 20, 2020.  (Respondent's Exhibit 27)[2]  Schuller had 234 days remaining ($365 - 131 = 234$).  Consequently, Schuller's federal one-year deadline was January 9, 2021 (May 21, 2020 + 234 days = January 9, 2021).  Schuller dated his federal application April 28, 2021 (109 days late).

Schuller contends that his application is late by only 64 days.  (Doc. 12 at 4) Schuller incorrectly calculates the limitation by erroneously (1) counting the ninety-day

---

[1] Schuller's direct appeal concluded on October 23, 2015. The conviction became final after ninety days, the time allowed under Rule 13.1, Supreme Court Rules, for petitioning for the writ of *certiorari*. 28 U.S.C. § 2244(d)(1)(A). *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002), and *Jackson v. Sec'y, Dep't of Corr.*, 292 F.3d 1347 (11th Cir. 2002).

[2] Schuller's additional post-conviction proceedings are inconsequential regarding the limitation because each began and ended while this post-conviction proceeding was pending.

delay of the limitation for petitioning for *certiorari* (a) from the mandate on direct appeal instead of the order on direct appeal[3] and (b) from the fifteen days allowed for moving for rehearing on direct appeal even though he filed no motion for rehearing[4] and (2) stops counting the ninety-day delay while his Rule 3.800 motion was pending and resumes counting the delay when that proceeding ended.

Schuller asserts entitlement to equitable tolling to overcome his untimeliness. The one-year limitation established in Section 2244(d) is not jurisdictional and, as a consequence, "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). *See Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002). Schuller must meet both requirements, and he controls the first requirement — due diligence — but not the second requirement — extraordinary circumstances. The failure to meet either requirement precludes equitable tolling. For the first requirement, "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence,'" *Holland*, 560 U.S. at 653 (internal quotations and citations omitted), and an applicant's "lack of diligence precludes equity's operation."

---

[3] Rule 13.3, Supreme Court Rules, explains that the ninety days "runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . ."

[4] Rule 13.3 explains that the counting of the ninety days is delayed until rehearing concludes "if a petition for rehearing is timely filed in the lower court by any party . . . ." But there is no delay if no rehearing is sought in the lower court. *Butler v. Sec'y, Florida Dep't of Corr.*, 621 F. App'x 604, 606 (11th Cir. 2015).

*Pace*, 544 U.S. at 419.  To satisfy the second requirement, Schuller must show extraordinary circumstances both beyond his control and unavoidable even with diligence.  *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).  *See cases collected in Harper v. Ercole*, 648 F.3d 132, 137 (2nd Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline.").  "[E]quitable tolling is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly.'"  *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009)).

Schuller extensively argues both that he acted diligently and that extraordinary circumstances precluded his timely filing.  (Doc. 12 at 4–14; Doc. 25)  Schuller is not entitled to equitable tolling because, even accepting that he acted with due diligence, Schuller fails to meet the extraordinary circumstance requirement.  As determined above, Schuller's limitation ran for 131 days in 2016 and 234 days in 2020 until early 2021, and Schuller represents that he gained access to the law library in November 2020 when about two months of the one-year limitation remained.  Schuller asserts that he did not know that the days that passed in 2016 would count toward the one-year limitation; he thought he had one year after the post-conviction proceedings ended.  Schuller is advised that ignorance of one's legal rights is not an "extraordinary circumstance" justifying equitable tolling.  *Jackson v. Asture*, 506 F.3rd 1349, 1356 (11th Cir. 2007) ("[T]his Court has defined 'extraordinary circumstances' narrowly, and

ignorance of the law does not, on its own, satisfy the constricted 'extraordinary circumstances' test."); *Jones v. Warden*, 683 F. App'x 799, 800 (11th Cir. 2017)[5] ("A lack of a legal education or related confusion does not constitute an extraordinary circumstance for a failure to file a federal petition in a timely fashion.").  Also, Schuller discusses his many unsuccessful attempts to access the prison's law library, which access was either precluded or restricted because of the severe security conditions caused by the COVID pandemic.  However, the "extraordinary circumstance" requirement is not met by limited or restricted access to a prison law library.  *Miller v. Florida*, 307 F. App'x 366, 367 68 (11th Cir. 2009)  ("[E]ven restricted access to a law library, lock-downs, and solitary confinement do not qualify as [extra]ordinary circumstances warranting equitable tolling."); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (discussing examples of no extraordinary circumstance based on institutional lock-down, solitary confinement, or access to neither legal papers nor law library); *see also Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004) ("Periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate.") (citing *Akins v. United States*, 204 F.3d 1086, 1089–90 (11th Cir. 2000)).  This district court is bound by the decisions of the Supreme Court and the Eleventh Circuit Court of Appeals.

Schuller's application (Doc. 1) is **DISMISSED AS TIME-BARRED**.  The clerk must enter a judgment against Schuller and **CLOSE** this case.

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

**DENIAL OF BOTH**
**CERTIFICATE OF APPEALABILITY**
**AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Schuller is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Schuller must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the application is clearly time-barred, Schuller is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Schuller must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 14, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE